**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

**VORONICA DANCE,**
435 Hideaway Day Drive, Apt. 301
Carrollton, Virginia 23314

*On behalf of herself and all others similarly situated,*

Plaintiff,

v.

**ANNE ARUNDEL DERMATOLOGY, P.A,**
1306 Concourse Drive, Suite 201,
Linthicum Heights, Anne Arundel County,
Maryland, 21090

Defendant.

Case No. 1:25-cv-02293

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Voronica Dance ("Plaintiff") brings Class Action Complaint against Defendant Anne Arundel Dermatology, P.A. ("AAD" or "Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this class action lawsuit against Defendant for its failure to properly secure and safeguard Plaintiff's and other similarly situated persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively "Private Information") that was impacted in a data breach that Defendant experienced between February 14, 2025 and May 13, 2025.

2. Defendant is "[o]ne of the largest and most well-established dermatology practices

in the Mid-Atlantic and Southeastern states."[1] It "specializes in general, surgical, and cosmetic dermatology"[2] and is headquartered in Linthicum Heights, Maryland.

3. In July 2025, Defendant sent a Notice of Data Breach to Plaintiff and other individuals whose Private Information was impacted by the Data Breach.

4. The Notice of Data Breach indicates that an unauthorized third part intruded on certain of Defendant's systems between February 14, 2025, and May 13, 2025. The Notice of Data Breach also states that Defendant "performed an assessment of these data files and determined, on May 20, 2025, that some of the files contained certain personal information when the unauthorized third part had access to them."

5. Upon information and belief, the following types of personally identifiable information ("PII") and protected health information ("PHI", and collectively "Private Information") were compromised as a result of the Data Breach: name, date of birth, patient ID, medical record number, health history, financial information, insurance information, and appointment history.[3]

6. Defendant failed to timely report the Data Breach exposing the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

7. In failing to adequately protect its consumers' information, adequately notify them about the Data Breach, and obfuscating the nature of the Data Breach, Defendant violated state law and harmed thousands of its current and former patients.

---

[1] https://aadermatology.com/ (last visited on July 14, 2025) (Emphasis omitted).

[2] *Id*.

[3] https://www.timesfreepress.com/classifieds/category/legal-notices/21677/notice-of-data-breach-anne-arundel-dermatology-aad-recently-identified-an-intrusion-on-certain-of-its-systems-by-an-unauthorized-third-party-aad/ (last visited on July 14, 2025).

8. Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Private Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

9. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

10. Plaintiff seeks on behalf of herself and the Class, monetary damages and injunctive relief including lifetime credit monitoring and ID theft monitoring.

**PARTIES**

11. Plaintiff is a natural person and citizen of Carrollton, Virginia, where she intends to stay.

12. Plaintiff Dance provided her information to Defendant in the course of obtaining services from AAD.

13. Defendant is a Maryland corporation, with its principal place of business located at 1306 Concourse Drive, Suite 201, Linthicum Heights, Maryland, 21090. Defendant is located in Anne Arundel County, Maryland.

**JURISDICTION AND VENUE**

14. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members exceeds 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship, namely Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A).

15. This Court has personal jurisdiction over Defendant because Defendant is registered to do business in this District and maintains its principal place of business in this District.

16. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### A. Background on Defendant & The Data Breach

17. Defendant is a dermatology practice group with over 60 locations across the Mid-Atlantic and Southeastern regions of the United States. In order to provide services to patients, Defendant accumulates highly sensitive Private Information of its patients.

18. In collecting and maintaining its patients' Private Information, Defendant agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Private Information.

19. Defendant understood the need to protect its patients' Private Information and prioritize its data security, and indeed, promises to safeguard such information via its Notice of Privacy Practices.[4]

20. Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to protect the PII/PHI of its patients, or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to patients' PII/PHI.

21. Defendant failed to take precautions designed to keep individuals' Private

---

[4] https://aadermatology.com/hipaa-privacy-notice/ (last visited July 15, 2025).

Information secure.

22. While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

23. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**B. The Data Breach was Foreseeable.**

24. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Plaintiff and Class Members' Private Information and the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

25. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to potentially millions of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

26. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[5]

[5] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited November 20, 2024).

27. A ransomware attack is a type of cyberattack that is frequently used to target healthcare providers due to the sensitive patient data they maintain.[6] In a ransomware attack the attackers use software to encrypt data on a compromised network, rendering it unusable and demanding payment to restore control over the network.[7] Ransomware attacks are particularly harmful for patients and healthcare providers alike as they cause operational disruptions that result in lengthier patient stays, delayed procedures or test results, increased complications from surgery, and even increased mortality rates.[8] In 2021, 44% of healthcare providers who experienced a ransomware attack saw their operations disrupted for up to a week and 25% experienced disrupted services for up to a month.[9]

28. An increasingly prevalent form of ransomware attack is the "encryption+exfiltration" attack in which the attacker encrypts a network and exfiltrates the data contained within.[10] In 2020, over 50% of ransomware attackers exfiltrated data from a network before encrypting it.[11] Once the data is exfiltrated from a network, its confidential nature is destroyed and it should be "assume[d] it will be traded to other threat actors, sold, or held for a

---

[6] *Ransomware warning: Now attacks are stealing data as well as encrypting it*, available at https://www.zdnet.com/article/ransomware-warning-now-attacks-are-stealing-data-as-well-as-encrypting-it/

[7] *Ransomware FAQs*, available at https://www.cisa.gov/stopransomware/ransomware-faqs

[8] *Ponemon study finds link between ransomware, increased mortality rate*, available at https://www.healthcareitnews.com/news/ponemon-study-finds-link-between-ransomware-increased-mortality-rate

[9] *The State of Ransomware in Healthcare 2022*, available at https://assets.sophos.com/X24WTUEQ/at/4wxp262kpf84t3bxf32wrctm/sophos-state-of-ransomware-healthcare-2022-wp.pdf

[10] *The chance of data being stolen in a ransomware attack is greater than one in ten*, available at https://blog.emsisoft.com/en/36569/the-chance-of-data-being-stolen-in-a-ransomware-attack-is-greater-than-one-in-ten/

[11] 2020 Ransomware Marketplace Report, available at https://www.coveware.com/blog/q3-2020-ransomware-marketplace-report

second/future extortion attempt."[12] And even where companies pay for the return of data attackers often leak or sell the data regardless because there is no way to verify copies of the data are destroyed.[13]

29. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

30. Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issued a warning to potential targets in 2019, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals… because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[14]

31. Entities in custody of PHI, like Defendant, reported the largest number of data breaches among all measured sectors in 2022, with the highest rate of exposure per breach.[15]

32. A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market whereas stolen payment card information sells for about $1.22 According to Experian:

> Having your records stolen in a healthcare data breach can be a prescription for financial disaster. If scam artists break into healthcare networks and grab your medical information, they can impersonate you to get medical services, use your data open credit accounts, break into your bank accounts, obtain drugs illegally, and even blackmail you with sensitive personal details.
>
> ID theft victims often have to spend money to fix problems related to having their data stolen, which averages $600 according to the FTC. But security research firm

[12] *Id.*
[13] *Id.*
[14] FBI, Secret Service Warn of Targeted, Law360 (Nov.18, 2019), https://www.law360.com/articles/1220974/fbisecret-service-warn-of-targeted-ransomware.
[15] *See* Identity Theft Resource Center, 2022 Annual Data Breach Report, ITRC (Jan. 2023) https://www.idtheftcenter.org/publication/2022-data-breach-report

> Ponemon Institute found that healthcare identity theft victims spend nearly $13,500 dealing with their hassles, which can include the cost of paying off fraudulent medical bills.
>
> Victims of healthcare data breaches may also find themselves being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores. In the worst cases, they've been threatened with losing custody of their children, been charged with drug trafficking, found it hard to get hired for a job, or even been fired by their employers.[16]

33. As a major healthcare provider, Defendant knew, or should have known, the importance of safeguarding the patients' Private Information entrusted to it and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Defendant's patients because of a breach. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**C. Defendant Failed to Implement & Maintain Reasonable Security**

34. Regardless of Defendant's failure to properly secure and monitor Private Information, Defendant was also grossly negligent in its decision to not properly encrypt or redact the Personal Information in its possession, as well as its decision to hold Private Information for longer than it had a legitimate use. Yet, Defendant inexplicably decided to continue storing Plaintiff and Class Members' Private Information on its systems long after their affiliation with Defendant ended.

35. Several best practices have been identified for entities like Defendant that store Private Information, including but not limited to educating all employees; using strong passwords; implementing multi-layer security measures such as firewalls, anti-virus, and anti-malware software; encrypting data to make it unreadable without a key; employing multi-factor

[16] Brian O'Connor, Healthcare Data Breach: What to Know About them and What to Do After One, Experian (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/

authentication; backing up data; and limiting employee access to sensitive information.

36. Other best cybersecurity practices that are standard in the data security industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

37. Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because Defendant failed to properly maintain and safeguard their computer systems and network. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. Failing to adequately protect Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to ensure that its vendors with access to their computer systems and data employed reasonable security procedures;

e. Failing to ensure the confidentiality and integrity of electronic Private Information it created, received, maintained, and/or transmitted;

f. Failing to implement technical policies and procedures for electronic information systems that maintain electronic Private Information to allow access only to those persons or software programs that have been granted access rights;

g. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations;

h. Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports;

i. Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic Private Information;

j. Failing to train all members of their workforces effectively on the policies and procedures regarding Private Information;

k. Failing to render the electronic Private Information it maintained unusable, unreadable, or indecipherable to unauthorized individuals;

l. Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act, 15 U.S.C. § 45;

m. Failing to adhere to industry standards for cybersecurity as discussed above; and,

n. Otherwise breaching their duties and obligations to protect Plaintiff and Class Members' Private Information.

38. Defendant negligently and unlawfully failed to safeguard Plaintiff and Class Members' Private Information by allowing cyberthieves to access Defendant's inadequately secured network, which provided unauthorized threat actors with unsecured and unencrypted Private Information.

39. Consequently, as detailed below, Plaintiff and Class Members now face an immediate, heightened risk of fraud and identity theft. Additionally, Plaintiff and the Class Members lost the benefit of the bargain they made with Defendant.

**D. The Theft of Private Information Has Severe & Long-Lasting Consequences**

40. The ramifications of Defendant's failure to keep Plaintiff and Class Members' Private Information secure are long lasting and severe. Once Private Information is stolen,

fraudulent use of that information and damage to victims is likely to continue for years.

41. The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[17]

42. This is because any victim of a data breach is exposed to severe consequences regardless of the nature of the data. In fact, criminals steal personally identifiable information to monetize it by selling the stolen data on the black market to identity thieves who aim to extort and harass victims or take over their identities to engage in illegal financial transactions under the victims' names

43. By failing to properly notify Plaintiff and the Class Members of the Data Breach, Defendant exacerbated their injuries. Specifically, by depriving them of the chance to take speedy measures to protect themselves and mitigate harm, Defendant allowed their injuries to fester and the damage to spread.

44. Private Information can be used to distinguish, identify, or trace an individual's identity. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[18]

45. It can take years for victims to notice their identity was stolen—giving criminals plenty of time to sell one's personal information to the highest bidder.

---

[17] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007). Available at https://www.gao.gov/new.items/d07737.pdf (last visited July 15, 2025).

[18] *See* https://georgewbush-whitehouse.archives.gov/omb/memoranda/fy2007/m07-16.pdf (last visited July 15, 2025).

46. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

47. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect."

48. One such example of criminals piecing together bits and pieces of compromised PII for profit is the development of "Fullz" packages.[19]

49. With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an

[19] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.,* Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm,* Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/ (last visited on July 15, 2025).

astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

50. The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

51. The existence and prevalence of "Fullz" packages means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like phone numbers and emails) of Plaintiff and the other Class Members.

52. Thus, even if certain information (such as emails or telephone numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

53. Responsible for handling highly sensitive personal information, Defendant knew or should have known the importance of safeguarding Private Information. Defendant also knew or should have known of the foreseeable consequences of a data breach. These consequences include the significant costs imposed on victims of the breach. Still, Defendant failed to take adequate measures to prevent the data breach.

54. Due to Defendant's inadequate practices, Plaintiff and Class Members' Private Information were exposed to criminals. In other words, Defendant disclosed and exposed its

Private Information to malicious operators and criminals. These criminals engage in disruptive and unlawful activities such as online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud)—all using stolen Private Information.

55. Given the nature of Defendant's Data Breach it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways..

56. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, simple credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[20] The information compromised in this Data Breach is impossible to change (such as medical information).

57. To date, Defendant has offered Plaintiff and Class Members temporary, non-automatic IDX identity monitoring. This is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly considering the Private Information at issue here.

58. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures to protect PII and PHI that it maintained.

---

[20] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes, Mar 25, 2020, *available at*: https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last visited July 15, 2025).

### E. The Value of Private Information

59. Stolen personal information is one of the most valuable commodities on the information black market. According to Experian, a credit-monitoring service, stolen personal information can sell for over $1,000.00 (depending on the type of information).[21]

60. The value of Plaintiff and Class Members' Private Information on the black market is considerable. Stolen personal information trades on the black market for years, and criminals frequently post stolen Private Information openly and directly on various "dark web" internet websites. Thus, after charging a substantial fee, criminals make such stolen information publicly available.

61. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[22] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[23]

62. As a result of the Data Breach, Plaintiff and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its acquisition by cybercriminals. This transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is likely readily available to others, and the rarity of the Private Information has been destroyed, thereby causing additional loss of value.

---

[21] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited July 15, 2025).

[22] https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last visited July 15, 2025).

[23] *See* https://datacoup.com/ (last visited July 15, 2025).

### F. Defendant Failed to Comply with FTC Guidelines

63. Federal and State governments have established security standards and issued recommendations to lessen the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[24]

64. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[25]

65. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[26] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

66. The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"),

---

[24] Federal Trade Commission, *Start With Security, available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf

[25] 17 C.F.R. § 248.201 (2013).

[26] Federal Trade Commission, *Protecting Personal Information: A Guide for Business, available at*: https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.

15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

67. Since Class Members entrusted Defendant with their Private Information, either directly or indirectly, Defendant had, and continues to have, a duty to keep their Private Information secure.

68. Plaintiff and the other Class Members reasonably expected that when they provide Private Information to Defendant that such Private Information would be protected and safeguarded.

69. Defendant was at all times fully aware of its obligation to protect the Private Information of its customers and current and former employees, including Plaintiff and Class Members. Defendant was also aware of the significant repercussions if it failed to do so.

70. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data—including Plaintiff and Class Members' Private Information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**G. Defendant Failed to Comply with HIPAA Requirements**

71. Defendant is required by HIPAA to safeguard patient Private Information.

72. Defendant is an entity covered under HIPAA, which sets minimum federal standards for privacy and security of Private Information.

73. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

74. Further to 45 C.F.R. § 160.103, HIPAA defines "protected health information" or

PHI as "individually identifiable health information" that is "transmitted by electronic media; maintained in electronic media; or transmitted or maintained in any other form or medium."

75. Under C.F.R. 160.103, HIPAA defines "individually identifiable health information" as "a subset of health information, including demographic information collected from an individual" that is (1) "created or received by a health care provider;" (2)"[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual;" and (3) either (a) identifies the individual; or (b) with respect to which there is a reasonable basis to believe the information can be used to identify the individual."

76. HIPAA requires Defendant to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains, or transmits; (b) identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI; (c) protect against reasonably anticipated, impermissible uses, or disclosures of the PHI; and (d) ensure compliance by its workforce to satisfy HIPAA's security requirements. 45 CFR § 164.102, *et. seq.*

77. In addition to failing to follow universal data security practices, Defendant failed to follow healthcare industry standard security practices.

78. Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[27] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

79. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires

[27] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[28]

### H. Plaintiff and Class Members Have Suffered Concrete Injury as a Result of Defendant's Inadequate Security and the Data Breach It Allowed

80. Plaintiff and Class Members reasonably expected Defendant to provide adequate security protections for their Private Information, and therefore, entrusted Defendant with sensitive personal information, including their sensitive PHI.

81. Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to work for Defendant or utilize Defendant's services as a customer, Plaintiff and other Class Members reasonably understood and expected that their Private Information would be protected with data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected. As such, Plaintiff and the Class Members suffered pecuniary injury.

82. Cybercriminals target and capture Private Information to exploit it; the Class Members are now, and for the rest of their lives will be, at a heightened risk of identity theft. Plaintiff has also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

83. The cybercriminals who targeted and obtained Plaintiff and Class Members' Private Information may exploit the information they obtained by selling the data in so-called "dark markets."

---

[28] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (last visited July 15, 2025).

84. As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their Private Information, for which there is a well-established national and international market.

85. Furthermore, certain Private Information has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.[29]

86. Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[30] Even data that have not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Class Members' Private Information will do so at a later date or re-sell it.

87. As a result of the Data Breach, Plaintiff and Class Members have already suffered damages and will continue to suffer damages.

**I. Plaintiff's Experience and Injuries**

88. Plaintiff Dance is a former patient of Defendant and a data breach victim.

89. As a condition of receiving services, Defendant required Plaintiff Dance to provide her Private Information, including at least her name, date of birth, Social Security Number, and health information.

90. Plaintiff Dance provided her Private Information to Defendant and trusted that the

---

[29] *Id.*

[30] *Data Breach Victims More Likely To Suffer Identity Fraud*, INSURANCE INFORMATION INSTITUTE BLOG (Feb. 23, 2012), https://web.archive.org/web/20170228020506/http://www.iii.org/insuranceindustryblog/?m=201202 (last visited July 15, 2025).

company would use reasonable measures to protect it according to state and federal law.

91. Additionally, Plaintiff Dance reasonably expected that her personal information would be destroyed once her treatment from Defendant ended.

92. As a result of its inadequate cybersecurity measures and data destruction policies, Defendant exposed Plaintiff Dance's Private Information for theft by cybercriminals and given the purpose of the hack, for sale on the Dark Web.

93. Defendant deprived Plaintiff Dance of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her about the Data Breach.

94. Plaintiff Dance suffered actual injury from the exposure of her Private Information —which violates her rights to privacy.

95. Plaintiff Dance suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

96. As a result of the Data Breach, Plaintiff Dance has spent time and made reasonable efforts to mitigate its impact, including researching the Data Breach, checking her credit report, and reviewing her credit card and financial account statements, just as Defendant instructed her to do.

97. Additionally, Plaintiff Dance has suffered actual injury as a result of the Data Breach in the form of fraudulent charges. Specifically, Plaintiff's Bank of America account has had two fraudulent charges (approximately $31 and $11.99 respectively). Plaintiff was forced to spend time disputing the unauthorized charges online, and then speaking with representatives from Bank of America to get a new card issued.

98. Plaintiff Dance will continue to spend considerable time and effort monitoring her

accounts to protect herself from identity theft. Plaintiff fears for her personal security and uncertainty over what Private Information was exposed. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

99. And in the aftermath of the Data Breach, Plaintiff Dance has suffered from a spike in spam and scam communications, particularly text messages and phone calls. Some of these phone calls are especially concerning because they regarding alleged tax issues and approval for loans that she has not applied for.

100. Once an individual's Private Information is for sale and access on the Dark Web, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[31] Plaintiff Dance's Private Information was compromised as a result of the Data Breach.

101. Plaintiff Dance has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

102. Plaintiff Dance also has a continuing interest in lifetime credit, medical and identity theft monitoring on account of the Data Breach.

**J. Plaintiff and the Class Suffered Common Injuries and Damages Due to Defendant's Conduct**

103. Defendant's failure to implement or maintain adequate data security measures for Plaintiff and Class Members' Private Information directly and proximately injured Plaintiff and

---

[31] *What do Hackers do with Stolen Information,* AURA, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited July 15, 2025).

Class Members by the resulting disclosure of their Private Information in the Data Breach.

104. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, inter alia, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. identity theft and fraud;

b. loss of time to mitigate the risk of identity theft and fraud

c. diminution in value of their Private Information;

d. out-of-pocket costs from trying to prevent, detect, and recover from identity theft and fraud;

e. lost benefit of the bargain and opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, inter alia, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. loss of the opportunity to control how their PII/PHI is used;

h. compromise and continuing publication of their PII/PHI;

i. unauthorized use of their stolen PII/PHI;

j. invasion of privacy; and

k. continued risk to their PII/PHI—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII/PHI.

**K. Defendant Could Have Prevented the Data Breach**

105. Data breaches are preventable.[32] As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[33] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[34]

106. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [35]

107. In a Data Breach like the one here, many failures laid the groundwork for the Breach. For example, the FTC has published guidelines that establish reasonable data security practices for businesses. The guidelines also emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

108. Additionally, several industry-standard best practices have been identified that—at a minimum—should be implemented by businesses like Defendant.

[32] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[33] *Id.* at 17.
[34] *Id.* at 28.
[35] *Id.*

## CLASS ALLEGATIONS

109. Plaintiff brings this nationwide class action on behalf of herself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

110. Plaintiff proposes the following Class definition, subject to amendments as appropriate.

> **All persons whose Private Information may have been compromised in the Data Breach, including all those who were sent Notice.**

111. Excluded from the Classes are the following individuals and/or entities: AAD, and AAD's parents, subsidiaries, affiliates, officers and directors, and any entity in which AAD has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

112. Plaintiff reserves the right to modify or amend the definition of the proposed classes and any future subclasses before the Court determines whether certification is appropriate.

113. **Numerosity**. The Members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Classes consist of at least thousands of individuals whose sensitive data was compromised in Data Breach.

114. **Commonality**. There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff and Class Members' Private Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems before and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f. Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h. Whether Defendant should have discovered the Data Breach sooner;

i. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's conduct was negligent;

k. Whether Defendant breach implied contracts with Plaintiff and Class Members;

l. Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

m. Whether Defendant failed to provide notice of the Data Breach in a timely

manner; and,

n. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

115. **Typicality**. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

116. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's Counsel are competent and experienced in litigating class actions.

117. **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

118. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management

difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

119. Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification is appropriate on a Class-wide basis.

120. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff weas exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

121. The litigation of the claims presented here is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the identifiable Class Members demonstrate that prosecuting this lawsuit as a class action would not present significant manageability problems.

122. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

123. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure Class Members' Private Information, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, the Private Information

Defendant continues to maintain will remain at risk of future breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

124. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive relief regarding the Class Members as a whole is appropriate.

125. Likewise, particular issues under Rule 23(c)(4) may be appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

A. Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

B. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

C. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

D. Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

E. Whether Defendant breached the implied contract;

F. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

G. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information

compromised in the Data Breach;

H. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff and Class Members' Private Information; and/or

I. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

126. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

127. Plaintiff and the Class entrusted Defendant with their Private Information.

128. Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for medical and business purposes only, and/or not disclose their Private Information to unauthorized third parties.

129. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information I were wrongfully disclosed.

130. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Plaintiff and the Class's Private Information involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

131. Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to

unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff and the Class's Private Information in Defendant's possession was adequately secured and protected.

132. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain.

133. Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff and the Class's Private Information.

134. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant, either directly or indirectly, with their confidential Private Information, a necessary part of obtaining medical care and services from Defendant.

135. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

136. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

137. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Plaintiff and the Class's Private Information, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

138. Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the

Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiff and the Class's Private Information, including basic encryption techniques freely available to Defendant.

139. Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

140. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

141. Defendant had and continues to have a duty to adequately disclose that Plaintiff and the Class's Private Information within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

142. Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of Plaintiff and the Class's Private Information.

143. Defendant has admitted that Plaintiff and the Class's Private Information was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

144. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding Plaintiff and the Class's Private Information during the time the Private Information was within Defendant's possession or control.

145. Defendant improperly and inadequately safeguarded Plaintiff and the Class's Private Information in deviation of standard industry rules, regulations, and practices at the time

of the Data Breach.

146. Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect Plaintiff and the Class's Private Information in the face of increased risk of theft.

147. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

148. Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Private Information that it was no longer required to retain pursuant to regulations.

149. Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

150. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, Plaintiff and the Class's Private Information would not have been compromised.

151. There is a close causal connection between Defendant's failure to implement security measures to protect Plaintiff and the Class's Private Information and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. Plaintiff and the Class's Private Information was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

152. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity of

how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and the unauthorized disclose of their Private Information; (v) costs associated with placing freezes on credit reports; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Plaintiff and the Class's Private Information; and (vii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

153. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

154. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

155. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class

are entitled to recover actual, consequential, and nominal damages.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

156. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

157. Plaintiff and Class Members' Private Information was provided to Defendant as part of receiving medical treatment or services that Defendant provided to Plaintiff and Class Members.

158. Plaintiff and Class Members agreed to be employed by Defendant or to pay for Defendant's ambulance services and provided their Private Information in the course of that relationship.

159. Defendant and Plaintiff and Class Members entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the security of Plaintiff and Class Members' Private Information, whereby, Defendant was obligated to take reasonable steps to secure and safeguard Plaintiff and Class Members' Private Information.

160. Defendant had an implied duty of good faith to ensure that Plaintiff and Class Members' Private Information in its possession was only used in accordance with its contractual obligations.

161. Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff and Class Members' Private Information and to comply with industry standards and applicable laws and regulations for the security of this information.

162. Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff and Class Members' Private Information, resulting in the Data Breach.

163. The Data Breach was a reasonably foreseeable consequence of Defendant's actions in the breach of these contracts.

164. As a result of Defendant's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain.

165. Had Defendant disclosed that its data security was inadequate, neither Plaintiff or Class Members, nor any reasonable person would have entered into such contracts with Defendant.

166. As a result of Data Breach, Plaintiff and Class Members suffered actual damages resulting from the theft of their Private Information, as well as the loss of control of their Private Information and remain at present risk of suffering additional damages.

167. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

168. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

169. Defendant benefited from receiving Plaintiff and Class Members' Private Information by its ability to retain and use that information for its own benefit. Defendant understood this benefit.

170. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff and Class Members' Private Information.

171. Defendant was also enriched from the value of Plaintiff and Class Members' Private Information. Private Information has independent value as a form of intangible property. Defendant also derives value from this information because it allows Defendant to operate its business and generate revenue.

172. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

173. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry and medical standards.

174. Defendant acquired the monetary benefit and Private Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

175. If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

176. Plaintiff and Class Members have no adequate remedy at law.

177. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity of how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft

and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and the unauthorized disclose of their Private Information; (v) costs associated with placing freezes on credit reports; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Plaintiff and the Class's Private Information; and (vii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

178. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

179. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all Class Members, request judgment against the Defendant and that the Court grant the following:

A. For an Order certifying the Classes and appointing Plaintiff and Counsel to represent the Classes;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and Class Members' Private Information, and from refusing to issue prompt, complete,

any accurate disclosures to the Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order requiring Defendant to compensate Plaintiff and Class Members for, at minimum, ten years of credit, medical and/or identify monitoring;

D. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the putative Class, demands a trial by jury.

Dated: July 15, 2025

Respectfully submitted,

By: */s/ Zachary E. Howerton*

Zachary E. Howerton (Bar No. 20688)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC**
223 Duke of Gloucester Street
Annapolis, MD 21401
Telephone: (410) 269-6620
Facsimile: (410) 269-1235
zhowerton@milberg.com

Terence R. Coates (*pro hac vice forthcoming*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 665-0204
Email: tcoates@msdlegal.com

*Attorneys for Plaintiff and the Proposed Class*